IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00909-KLM

SURJIT SINGH,

    Petitioner,

v.

JOHNNY CHOATE, Warden, Denver Contract Detention Facility,

    Respondent.
_____

**ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS**
_____

    Petitioner Surjit Singh, a native and citizen of India, is in the custody of the federal government at an immigration detention center in Aurora, Colorado pending the conclusion of removal proceedings. This matter is before the Court on the amended *Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241* filed *pro se* by Mr. Singh challenging his continued detention.[1] (ECF No. 16.) On May 14, 2019, the Court ordered Respondent to show cause why the Application should not be granted. (ECF No. 22.) On May 29, 2019, the government filed *Respondent's Response to Order to Show Cause* (ECF No. 26); on August 5, 2019, Mr. Singh filed *Petitioner's Traverse to Respondent's Reply* (ECF No. 35). For the reasons discussed below, the Court concludes that the Application should be granted in part and denied in part.

    The Court must construe the Application and other papers filed by Petitioner

---

1 The parties have consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2(d). (*See* ECF No. 31.)

1

liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110.

**I.     BACKGROUND**

The pertinent facts are undisputed. Petitioner Surjit Singh is a native and citizen of India. (Decl. of Paul Lauciello, ECF No. 26-1 at 1.) On May 1, 2005, Petitioner was granted lawful permanent resident status in the United States. (*Id.*) In June of 2015, in the United States District Court for the District of Nevada Petitioner pled guilty to two crimes: (1) Conspiracy to Possess with Intent to Distribute a Controlled Substance and Controlled Substance Analogue; and (2) Conspiracy to Commit Benefits Fraud. *See United States v. Singh, et al.*, No. 13-cr-00118-LRH-WGC (D. Nev. Dec. 18, 2013). He was sentenced to thirty months in prison and ordered to pay $395.23 in restitution. *See id.* Before he completed his prison sentence, the Department of Homeland Security issued a Notice to Appear which commenced removal proceedings against Petitioner because he was an alien convicted of an aggravated felony, hence subject to removal from the United States under 8 U.S.C. § 1227(a)(2)(A)(iii). (*See* Lauciello Decl. at 2.) On October 4, 2017, after serving his sentence and on being released from prison, immigration officials detained Petitioner to proceed with removal proceedings as required under § 1227(a)(2)(A)(iii) (providing that the Attorney General "shall take into custody any alien who" is removable as an aggravated felon). (*Id.*)

On October 23, 2017, Petitioner appeared in immigration court and requested a

continuance to obtain counsel, which was granted to November 8, 2017. (*Id.* at 2.) On November 8, 2017, Petitioner appeared with counsel who requested a continuance to prepare, which was granted. (*Id.*) On November 29, 2017, Petitioner again appeared with counsel—this time he admitted the allegations and conceded the charge in the Notice to Appear. (*Id.* at 3.) Instead of contesting the allegations, counsel for Petitioner stated that he would seek relief from removal. (*Id.*)

The Immigration Judge (IJ) held an individual merits hearing on Petitioner's applications for relief from removal on April 6, 2018. (*Id.*) Then, on May 11, 2018, the IJ denied Petitioner's requests for relief from removal and ordered him removed from the United States to India. (*Id.*)

Petitioner appealed the adverse rulings to the Board of Immigration Appeals (BIA). (*Id.*) Between June 2018 and August 24, 2018, Petitioner filed two motions to remand the matter based on an incomplete record of the proceedings below—the BIA granted the second motion to remand on October 25, 2018. (*Id.* at 3-4). On remand, the IJ held two status conferences (November 20, 2018 and December 4, 2018) to determine how to proceed. (*Id.* at 4) Counsel for Petitioner requested, and was granted, a new individual merits hearing. After the second hearing, the IJ again denied all relief from removal and, on January 14, 2019, ordered Petitioner removed from the United States. (*Id.*)

Petitioner again appealed to the BIA. He was scheduled to file a brief with the BIA on March 19, 2019, but requested an extension of time to do so. (*Id.*) That request was granted with the Petitioner's brief deadline extended to April 9, 2019. (*Id.*) The

appeal remains pending at this time. (*Id.*)

With his appeal pending before the BIA, Petitioner commenced this habeas action in the United States District Court for the Northern District of California. (ECF No. 1.) Because Petitioner is held at the Aurora Contract Detention facility in Aurora, Colorado, the case was transferred to this Court on March 26, 2019. (ECF No. 10.) The Court issued an Order Directing Petitioner to Cure Deficiencies on March 27, 2019. (ECF No. 13.) He cured the identified deficiencies by paying the applicable filing fee and submitting an amended habeas application on the court-approved form. (ECF Nos. 14 and 16.)

Petitioner's application first seeks to terminate the removal proceedings against him because a defective Notice to Appear was filed in the immigration proceedings. (ECF No. 16 at 4.) Petitioner further asserts that the removal proceedings were defective because the IJ failed to inform him of his eligibility to seek a waiver of inadmissibility to remain with his spouse and daughter. (*Id.* at 2.) Finally, Petitioner requests an individualized bond hearing before a neutral decision-maker to determine whether his continued detention is justified by clear and convincing evidence of flight risk and danger. (*Id.* at 4.) The Court will address the claims in turn.

## II. DISCUSSION

### A. Challenges to Removal Proceedings

Petitioner seeks to invalidate the removal proceedings based on an allegedly defective Notice to Appear and because the IJ failed to inform him that he was eligible to seek a waiver of inadmissibility. The government responds to Petitioner's challenges

4

to the removal proceedings by arguing: one, the removal order is not a final, appealable order because Petitioner's appeal is pending with the BIA; and, two, even if the order were final, this Court lacks jurisdiction to consider challenges to the removal proceedings. (ECF No. 26 at 4-6.) Petitioner does not address either argument in his traverse. (*See* ECF No. 35.)

Even once the removal order becomes final, the Court lacks jurisdiction over habeas challenges to removal orders. "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541 (1986). As to Petitioner's claims challenging the removal proceedings and resulting order or removal, "[t]he REAL ID Act expressly divests district courts of jurisdiction over habeas challenges to removal orders, including those arising from criminal offenses, and funnels all such challenges to the appropriate court of appeals as the sole and exclusive means for judicial review of an order of removal." *Thoung v. United States*, 913 F.3d 999, 1003 (10th Cir. 2019); *see also Gonzalez-Alarcon v. Macias,* 884 F.3d 1266, 1278 (10th Cir. 2018) ("Congress clearly intended to funnel all challenges to removal through the petition for review process."). Therefore, the Court lacks jurisdiction in this habeas corpus action to consider Petitioner's challenges to the removal proceedings and order of removal.

**B. Petitioner's Continued Detention and Request for Bond Hearing**

The Court is left to consider Petitioner's challenge to his continued detention. The Court begins with an overview of the statutory authority to detain Petitioner followed by

5

an analysis of whether such detention violates due process as applied to him.

   1. *Statutory authority to detain.*

Detention of aliens within the United States is governed by 8 U.S.C. § 1226 and 8 U.S.C. § 1231. Section 1226 grants authority to detain aliens before entry of a final removal order and § 1231 authorizes detention during the removal period that commences after entry of a final order of removal. The removal period begins on the latest of the following dates:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). As the government correctly notes, a removal order does not become administratively final until the BIA affirms the immigration judge's order. 8 U.S.C. § 1101(a)(47)(B). Therefore, according to § 1231(a)(1)(B)(i), Petitioner's removal order is not final, and the removal period has not commenced. As a result, Petitioner's detention is governed by § 1226.

Section 1226(a) generally grants the Attorney General discretion to arrest and detain an alien pending a decision on whether the alien should be removed. However, § 1226(c) *requires* detention of certain aliens, including aliens who are "deportable by reason of having committed any offense covered in [8 U.S.C. § 1227(a)(2)(A)(iii)]." 8 U.S.C. § 1226(c)(1)(B). Title 8 U.S.C. § 1227(a)(2)(A)(iii) states that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."

6

Petitioner concedes that he is an alien and that he has been convicted (on his guilty plea) of a crime meeting the statutory definition of an aggravated felony. *See* 8 U.S.C. § 1101(a)(43)(B) (defining "aggravated felony" to include offenses that involve "illicit trafficking in a controlled substance"). Therefore, his detention pending a removal decision is governed by § 1226(c). Petitioner does not contend that the sole exception to mandatory detention under § 1226(c), which is found in § 1226(c)(2) and relates to witness protection, is applicable. As a result, his detention is mandatory. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018) ("We hold that § 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes.").

Because Petitioner is being detained pursuant to § 1226(c), his references to § 1226(a) are not relevant to his claims. (*See, e.g.*, ECF No. 35 at 6-7.) Furthermore, to the extent Petitioner may be asserting a claim that he has a statutory right to a custody redetermination hearing under § 1226(c), that claim lacks merit. After *Jennings*, it is clear that there is no statutory right to a bond hearing or any sort of custody redetermination hearing under § 1226(c). *See Jennings*, 138 S. Ct. at 846, 850-51 (rejecting arguments that § 1226(c) should be interpreted to include an implicit 6-month time limit on the length of mandatory detention and that aliens detained under § 1226(c) must be given periodic bond hearings). Therefore, what remains are Petitioner's arguments that continued detention without a bond hearing violates the Fifth Amendment's due process guarantee.

7

## 2. Constitutionality of detention.

Petitioner claims his prolonged detention without a bond hearing violates the Fifth Amendment's Due Process Clause. (*See* ECF Nos. 16 and 35.) According to Petitioner, "at a minimum, due process requires a bond hearing after detention has become unreasonably prolonged." (ECF No. 35 at 30.) The government counters that continued detention is not unconstitutional because Petitioner has contributed to the delays and the "proceedings will likely be completed soon." (ECF No. 26 at 8.) The Court has jurisdiction under 28 U.S.C. § 2241 to consider Petitioner's constitutional challenge to his detention without bail under § 1226(c). *Demore v. Kim*, 538 U.S. 510, 517 (2003).

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Id.* at 523 (internal quotation marks omitted). It is equally clear that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id.* at 531. In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that six months is a presumptively reasonable period under the Due Process Clause for detention during the removal period (the period after a removal order has become final, but before the individual has been removed). *Id.* at 701. After six months, if "the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing" or release him. *Id.*

But in *Demore*, the Supreme Court rejected a due process claim brought by an alien who conceded he was deportable and had been detained approximately six months. *Id. Zadvydas* was distinguished, in part, because that case involved indefinite

8

and potentially permanent detention under § 1231 during the removal period rather than pre-removal detention under § 1226(c), which has a definite termination point. *Id.* at 528-29. The *Demore* Court also noted that, according to the Executive Office for Immigration Review, detention under § 1226(c) in most cases lasted an average of forty-seven days and, in the remaining cases involving an appeal to the BIA, detention lasted an average of four months. *Id.* at 529. Petitioner is not, however, being detained pursuant to § 1231. Therefore, to the extent he relies on *Zadvydas* in support of his constitutional claim, that decision—and its presumptive six-month limit on detention—does not apply.

The government concedes that "*Demore* does not directly address the exact point at which continued detention has become so unduly prolonged as to require a bond hearing." (ECF No. 26 at 10.) Thus, both parties appear to agree that due process does, at some point, require a bond hearing for a detainee like Petitioner who is subject to mandatory pre-removal detention under § 1226(c). But when does pre-removal detention become unconstitutionally prolonged?

The parties have not identified on-point authority from the Supreme Court or the Tenth Circuit to answer this question and the Court's own research has uncovered none. However, Justice Kennedy's concurrence in *Demore* provides a helpful starting point. In a concurring vote to uphold mandatory detention under § 1226(c), Justice Kennedy first noted that mandatory detention is "based upon the Government's concerns over the risks of flight and danger to the community [and] the ultimate purpose behind the detention is premised upon the alien's deportability." *Demore*, 538 U.S. at

531 (Kennedy, J., concurring). He went on to caution that, because "the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* Thus, "[w]ere there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Id.* at 532-33.

When faced with this issue, other district courts look to several factors in weighing whether detention is so unduly prolonged as to become unreasonable or unjustified in a particular case.

> These factors include (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858-59 (D. Minn. 2019); *see also Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018) (recognizing prior holdings that "due process entitles § 1226(c) detainees to a bond hearing at some point, with the exact time varying with the facts of the case"). These factors, as applied to Petitioner, weigh in favor of granting an individualized bond hearing.

First, Petitioner has been detained for over twenty months without a bond hearing. The government cites a single case for the proposition that detention for more than a year without an individualized bond hearing, standing alone, does not violate due

10

process. (ECF No. 26 at 11 (citing *Carlos A. v. Green*, 2018 WL 3492150, at \*5 (D.N.J. July 20, 2018) (finding that "Petitioner's continued detention [beyond a year] has not become so prolonged that it has become arbitrary and unreasonable, and § 1226(c) is therefore not unconstitutional as applied to Petitioner")).) The government cites no case holding that twenty months of detention is reasonable. And other courts have found detention for approximately a year or more constitutionally unreasonable. *See, e.g., Jamal A.*, 358 F. Supp. 3d at 859 (nineteen-month detention strongly favors granting a bond hearing); *Salazar v. Rodriguez*, No. CV 17-1099 (JMV), 2017 WL 3718380, at \*6 (D.N.J. Aug. 29, 2017) (finding detention for just over one year unreasonable); *Lett v. Decker*, 346 F. Supp. 3d 379, 387 (S.D.N.Y. 2018) (finding detention unreasonable where alien detained for nearly ten months); *Perez v. Decker*, No. 18-CV-5279, 2018 WL 3991497, at \*6 (S.D.N.Y. Aug. 20, 2018) (holding that a detention under § 1225(b)(2)(A) longer than nine months was "unreasonable" and that the alien's due process rights "require[d] him to be afforded . . . an individualized bond hearing"). The length of Petitioner's detention weighs strongly in his favor.

Second, the Court considers how long detention is likely to continue. The government claims that "proceedings will likely be completed soon." (ECF No. 26 at 8.) This is because Petitioner's appeal with the BIA is pending and briefing is complete. (*Id.* at 12.) Petitioner counters that he has never filed a frivolous claim or appeal and that "removal is still not reasonably foreseeable[.]" (ECF No. 35 at 32.) In support of its argument, the government cites *Soberanes v. Comfort*, 388 F.3d 1305, 1311 (10th Cir. 2004). In that habeas appeal, the Tenth Circuit rejected a challenge to continued

detention where the petitioner had appealed a final removal order to the Ninth Circuit—his appeal was pending during the court's review of his § 2241 habeas petition. The Tenth Circuit stated that the petitioner's "detention is clearly neither indefinite nor potentially permanent like the detention held improper in *Zadvydas*; it is, rather, directly associated with a judicial review process that has a definite and evidently impending termination point, and, thus, is more akin to detention during the administrative review process, which was upheld in *Demore*[.]" *Id.* The court went on to "recognize, however, that there are pertinent contingencies, involving a sister circuit's timely consideration and disposition of a petition for review, that are beyond our control. We therefore emphasize that '[b]ecause circumstances may ultimately change in [petitioner's] situation, we affirm the dismissal [of his habeas petition] without prejudicing [his] ability to file a new § 2241 petition in the future.'" *Id.* Accordingly, the court could "only presume that the Ninth Circuit's decision on the petition for review will be forthcoming in due course[.]" *Id.*

Unlike *Soberanes*, this case involves ongoing pre-removal detention—Petitioner is not subject to a final order of removal. Moreover, the length Petitioner has already been detained can nearly be counted in years, not days or months, as was the case in *Zadvydas* and *Demore*—recall that when the Supreme Court issued those opinions most cases lasted an average of forty-seven days and, in the remaining cases involving an appeal to the BIA, detention lasted an average of four months. Nor can the Court rely on the presumption that Petitioner's case will be resolved in "due course" given the current backlog of removal cases. *See E. Bay Sanctuary Covenant v. Trump*, No. 18-
12

17274, 2018 WL 8807133 (9th Cir. Dec. 7, 2018) ("The current backlog of asylum cases exceeds 200,000—about 26% of the immigration courts' total backlog of nearly 800,000 removal cases."). The government has, at best, argued that a *decision* from the BIA is likely to be made soon because briefing is complete. But that doesn't end Petitioner's detention: he may still appeal the BIA's decision to the circuit court and, even after his appeal is decided, the government presumptively has an additional six months to remove him under *Zadvydas*. All this amounts to the fact that his detention will definitely terminate at some point, but that point is likely to be many months or even years from now. Therefore, this factor weighs in Petitioner's favor.

Third, the Court will address the nature and extent of any delays in the removal proceedings caused by the Petitioner. The government argues that Petitioner "himself was the source of several continuances and extensions of time" contributing to delays in the removal proceedings. (ECF No. 26 at 11.) Petitioner contends the extensions of time were requested "in good faith to find a lawyer and to gather evidence to prepare his removal case." (ECF No. 35 at 31.) The record before the Court does not demonstrate any bad faith or dilatory tactics by either party. In fact, a portion of the delay in this case can be attributed to the BIA granting Petitioner's motion to remand, which supports his argument that his challenges are being made in good faith. And Petitioner's requests for continuances have added, at most, three months to the removal proceedings. The government does not argue that the other seventeen months of delay are attributable to Petitioner. Therefore, this factor tips in Petitioner's favor.

Fourth, the Court considers the conditions of Petitioner's detention. The

13

government makes the general claim that Petitioner "is being detained in a civil immigration detention facility rather than a penal institution." (ECF No. 26 at 11-12.) Petitioner responds that he is under "locked down conditions 24 hours a day" and "the facility houses U.S. Marshall detainees [which means] the immigration detainees are being subjected to the same conditions as U.S. Marshall detainees." (ECF No. 35 at 31-32 (errors in original).) To begin, whether Petitioner is detained in a luxurious hotel, a detention facility, or some other building, he is being deprived of his liberty—thus, this factor seems somewhat beside the point. Nonetheless, Petitioner contends the facility is under lock down conditions 24 hours a day and houses other, presumably criminal, detainees of the U.S. Marshals. Thus, this factor weighs in Petitioner's favor.

Fifth, nothing in the record suggests that the government has caused any delay in the removal proceedings, which weighs favorably for the government.

Sixth, the Court addresses the likelihood that the proceedings will result in a final removal order. Petitioner does not dispute that he is an alien who has been convicted (on his guilty plea) of a crime meeting the statutory definition of an aggravated felony. There is also no dispute that 8 U.S.C. § 1227(a)(2)(A)(iii) provides for his removal from the United States. Yet neither party apprises the Court about the merit of Petitioner's defenses to the pending removal proceedings. The continued detention of an alien who asserts no defenses will be more reasonable than if the alien had at least some possibility of remaining in the country. *See Demore*, 538 U.S. at 531 (Kennedy, J., concurring) ("[T]he ultimate purpose behind the detention is premised upon the alien's deportability."). Based on the record, this factor favors the government.

14

Ultimately, in weighing these factors the Court concludes that Petitioner's continued, lengthy detention, without any individualized bond hearing has become unreasonable in violation of the Due Process Clause.

## III. CONCLUSION

For the foregoing reasons, the *Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241* (ECF No. 16) is **granted in part and denied in part**. Accordingly, it is **ordered** that within thirty (30) days from the date of this order the Respondent shall take Mr. Surjit before an immigration judge for an individualized bond hearing in which the government shall bear the burden to demonstrate by clear and convincing evidence that he is a flight risk or a danger to the community. *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005) (citing *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996) (ordering a hearing before an Immigration Judge with the power to grant bail unless the government establishes the alien is a flight risk or will be a danger to the community); *Singh v. Holder*, 638 F.3d 1196, 1203-04 (9th Cir. 2011) (placing burden of proof on government to establish whether detention is justified by clear and convincing evidence); *see also Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (requiring government to provide clear and convincing evidence to justify civil commitment because "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause").

DATED August 21, 2019.

BY THE COURT:

*[signature]*

Kristen L. Mix
United States Magistrate Judge